# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

JAMES AARON THOMPSON,

  Plaintiff,

  v.

GEORGIA DEPARTMENT OF
CORRECTIONS; CORECIVIC, INC.;
WARDEN ROBERT ADAMS, JR.; and
COMMISSIONER GREGORY DOZIER,

  Defendants.

CIVIL ACTION NO.: 6:17-cv-128

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Long Unit in Ludowici, Georgia, filed a Complaint pursuant to 42 U.S.C. § 1983 contesting certain events which allegedly occurred at Jenkins Correctional Facility in Millen, Georgia. (Doc. 1.) Plaintiff attempts to bring this cause of action on behalf of three (3) other inmates. For the reasons set forth below, I **RECOMMEND** the Court **DISMISS without prejudice** the claims of the three (3) other inmates listed on the Complaint form. I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.[1]

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280,

## PLAINTIFF'S ALLEGATIONS

In his Complaint, Plaintiff contends he was told on June 13, 2017, that he could "not offer congregational prayer[]" and that this had been the policy since December 2016. (Doc. 1, p. 5.) Plaintiff states he received a copy of this policy bearing Defendant Robert Adams' signature. According to Plaintiff, he is a practicing Muslim who must perform the congregational prayer five (5) times a day and must face east. (Id.) Plaintiff contends "their" resolution is to allow Muslim adherents to pray parallel to their bunks, which prevents him from facing east during his prayers and from praying in congregation, as the Quran prescribes. (Id.) Plaintiff avers that, if he prays parallel to his bunk, it will prevent his cellmate from accessing his bunk, which is a violation of the policy that religious practices should not impose on another inmate.

Additionally, Plaintiff alleges fourteen (14) Muslim inmates were caught praying in congregation across three (3) dormitories. Plaintiff contends he and the other inmates were taken to the segregation unit and placed on pending investigation status for seven (7) days. (Id.) Plaintiff maintains the Georgia Department of Corrections is responsible for "oppressing" his right to religious exercise through this policy against congregational prayer, and CoreCivic, Inc. is responsible for this "oppression" because it enforces this policy. (Id.) Plaintiff seeks

---

1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond). Additionally, Plaintiff has an opportunity to amend his Complaint to correct the deficiencies noted in this Report and Recommendation. See Fed. R. Civ. P. 15. Should Plaintiff seek to amend his Complaint, he must file any desired amendment within **fourteen (14) days** from the date of this Report and Recommendation.

compensatory damages and requests that the Georgia Department of Corrections terminate this policy immediately. (Id. at p. 6.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Plaintiff's Efforts to Bring Suit on Behalf of Other Inmates**

Plaintiff attempts to file a single action on behalf of three (3) other inmates, ostensibly to circumvent or pro-rate payment of the filing fee. The Prison Litigation Reform Act of 1996 ("PLRA") provides that a prisoner bringing a civil action *in forma pauperis* must pay the full filing fee. See 28 U.S.C. § 1915(b). The Eleventh Circuit Court of Appeals has determined that the language of the PLRA requires each prisoner to pay the full amount of the filing fee or face dismissal of his case. Hubbard v. Haley, 262 F.3d 1194, 1197–98 (11th Cir. 2001). Further, "[a]n individual unquestionably has the right to litigate his own claims in federal court, before both the district and appellate courts . . . . The right to litigate for oneself, however, does not create a coordinate right to litigate for others." Walker v. Brown, No. CV 112-105, 2012 WL 4049438, at *1 (S.D. Ga. Aug.14, 2012) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that a *pro se* prisoner may not litigate the interests of other prisoners in class action)), *report and recommendation adopted by* 2012 WL 4052038 (S.D. Ga. Sept.13, 2012); see also Wallace v. Smith, 145 F. App'x 300, 302 (11th Cir. 2005) (per curiam) (same).

As Plaintiff Thompson moved to proceed *in forma pauperis* and was granted that status, the Court should **DISMISS without prejudice** the claims of the other three (3) inmates listed on the Complaint form. The Court considers Plaintiff Thompson to be the only Plaintiff for purposes of this cause of action.

**II.    Dismissal for Failure to Exhaust Administrative Remedies**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States

Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In <u>Porter</u>, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. <u>Porter</u>, 534 U.S. at 523; <u>see also</u> <u>O'Brien v. United States</u>, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" <u>Green v. Sec'y for Dep't of Corr.</u>, 212 F. App'x 869, 871 (11th Cir. 2006) (quoting <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." <u>Id.</u> at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90–91. In other words, an institution's requirements define what is considered exhaustion. <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative

grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

Within the Georgia Department of Corrections, the grievance procedure is a two-step process. See Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015), *report and recommendation adopted*, 2015 WL 5025478 (S.D. Ga. Aug. 24, 2015) (citing Georgia Department of Corrections' Standard Operating Procedure IIB05-0001). The process commences with the filing of a grievance, which must be filed within ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. Id. The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in

writing of the extension before the original forty (40) calendar days have expired. Id. An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. Id. The Commissioner has 100 calendar days after receipt to render a decision. These time limits may be waived for good cause. Id.

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones, 549 U.S. at 216. However, the normal pleading rules still apply, and when an affirmative defense appears on the face of a complaint making it clear that a prisoner cannot state a claim for relief, dismissal is warranted under the screening process set out in 28 U.S.C. § 1915A. Id. at 214–15. Thus, when a prisoner admits in his complaint that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241 at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

It is apparent from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies prior to filing this lawsuit. Plaintiff admits in his Complaint that he had not yet received a response to his appeal with the Georgia Department of Corrections concerning the denial of his grievance at the institutional level. (Doc. 1, p. 4.) The PLRA's exhaustion requirement demands that a prisoner "properly take each step within the administrative process." Bryant, 530 F.3d at 1378. Plaintiff asserts he submitted his appeal on June 23, 2017. His

Complaint is dated September 20, 2017, and was filed on September 25, 2017. The Commissioner had 100 days from receipt of Plaintiff's appeal to issue a response, or no earlier than October 2, 2017. Instead of waiting for the Commissioner's response or for the time for response to elapse to fully and properly exhaust his administrative remedies, Plaintiff filed the instant case.

Accordingly, I **RECOMMEND** that the Court **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust administrative remedies.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[2] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at \*1–2 (S.D. Ga. Feb. 9, 2009).

---

[2] A certificate of appealability is not required in this Section 1983 action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DISMISS without prejudice** the claims of the other three (3) inmates listed as plaintiffs on the Complaint form. I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff Thompson's Complaint based on his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

However, Plaintiff may amend the Complaint to cure any deficiencies noted in this Report and Recommendation. See Fed. R. Civ. P. 15. Should Plaintiff seek to amend the Complaint, Plaintiff must file the amended complaint within **fourteen (14) days** from the date of this Report and Recommendation.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of June, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA